## RAIL v. MORRISS et al.

### No. 10064.

Court of Civil Appeals of Texas. San Antonio.

June 20, 1936.

Rehearing Denied June 20, 1936.

Joe Burkett, of San Antonio, for appellant.

Will A. Morriss, R. L. Ball, G. O. Brown, and J. R. Davis, all of San Antonio, for appellees.

MURRAY, Justice.

This is an application by James O. Rail, filed in the Fifty-Seventh district court of Bexar county, against Will A. Morriss, Jr., as chairman, and other members, of the Democratic Executive Committee of Bexar County, to compel said committee to place his name upon the official ballot as a candidate for Representative in Congress from district No. 20, composed of Bexar county only, and to enjoin the committee from making an assessment against him of more than $1. The trial court denied the mandamus, and James O. Rail has perfected an appeal to this court.

The facts in this case are as follows:

James O. Rail is a candidate for the office of Representative in Congress from district No. 20. This district is composed of Bexar county only. The Democratic Executive Committee of Bexar County,

at a regular meeting provided for in article 3117, R.S.1925, assessed each candidate for Representative in Congress the sum of $1,125, as his proportionate share of the expense of conducting the Democratic Primary to be held on July 25, 1936, and duly notified each candidate of such assessment.

James O. Rail has tendered the sum of $1 and demanded the right to have his name appear upon the ballot as a candidate for Representative in Congress.

The question here presented is whether or not the Democratic Executive Committee has authority to assess against a candidate for Representative in Congress in a district composed of only one county his estimated proportion of the expense of holding the primary election.

The statutes which control this question are article 3108, as amended by Acts 1931, c. 105, § 2 (Vernon's Ann.Civ.St. art. 3108), and article 3116, R.S.1925, as amended by Acts 1927, c. 54, § 1 (Vernon's Ann. Civ.St. art. 3116).

Article 3108 reads as follows: "Art. 3108. (3094) Expenses of primary. At the meeting of the county executive committee provided in Article 3117, the county committee shall also carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks and messengers, to report the result in each precinct to the county chairman, as provided for herein, and all other necessary expenses of holding such primaries in such counties and shall apportion such cost among the various candidates for nomination for county and precinct offices only as herein defined, and offices to be filled by the voters of such county, or precinct only (candidates for State offices excepted), in such manner as in their judgment is just and equitable, giving due consideration to the importance and emoluments of each such office for which a nomination is to be made, and shall, by resolution, direct the chairman to immediately mail to each person whose name has been requested to be placed on the official ballot a statement of the amount of such expenses so apportioned to him, with the request that he pay the same to the county chairman on or before the Saturday before the fourth Monday in June thereafter. (As amended Acts 1931, 42nd Leg. p. 180, ch. 105, § 2.)"

[redacted] It is too plain for argument that the above article authorizes the county executive committee to assess against each county or precinct officer, and each officer who is to be voted upon by the voters of *one county only,* a pro rata portion of the estimated expense of conducting the primary election. If this were not true, the language "and offices to be filled by the voters of such county, or precinct only" would be meaningless. The late lamented Chief Justice Fly, in speaking for this court in the case of Holzschuher v. Wurzbach, 286 S.W. 289, construed this language to include district officers in districts composed of only one county, in a decision delivered on July 5, 1926, and with knowledge of this decision the Legislature thereafter, in 1931, re-enacted article 3108, using the same language. Under such facts it will be presumed that the Legislature used the language in the sense and intended it should be given the construction theretofore placed upon it by the court. We therefore hold that article 3108, R.S.1925, as amended, authorized the county executive committee to assess a candidate for a district office composed of one county only, a just proportion of the estimated expense of conducting a primary election.

Article 3116 provides that no person's name shall be placed on the ballot as a candidate for a district, county, or precinct office who has not paid to the county executive committee, the amount of the estimated expense of holding such primary apportioned to him by the committee, and then provides for certain exceptions in the following language: "Provided, however, that no candidates for nomination for chief justice or associate justice of a court of civil appeals or for representative in Congress or for district judge or district attorney or any other district office in representative or judicial districts composed of four or more counties shall be required to pay more than one ($1.00) dollar to any county executive committee," etc.

It is plain from the above language that any candidate for a district office in a district composed of four or more counties cannot be required to pay more than $1 per county for the privilege of having his name placed upon the official ballot of a primary election. Appellant herein is not a candidate in a district composed of four or more counties and does not come within

the exception provided for in said article 3116. Article 3116a, Vernon's Ann.Civ.St., makes a different provision with reference to State Senators and Representatives in the State Legislature. See, also, article 3168, R.S.1925.

Accordingly, we conclude that the county Democratic executive committee properly assessed each candidate for Representative in Congress in and for district No. 20, the sum of $1,125, and that no candidate for such office should have his name placed upon the ballot unless he pays that sum within the time prescribed by law.

The judgment of the trial court is in all things affirmed, and the application for mandamus denied.